IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MARTHA B. MOONEY                                                    PLAINTIFF


v.                              CASE NO.        12-2113


CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                                  DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision

of the Commissioner of Social Security Administration (Commissioner) denying his claim for a

period of disability and disability insurance benefits (DIB) and supplemental security income

("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial

review, the court must determine whether there is substantial evidence in the administrative

record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g)*.*

### I.  Procedural Background:

The plaintiff filed her applications for DIB and SSI on August 13, 2009, alleging an onset

date of September 15, 2008, due to plaintiff's diabetes, arthritis in hands, neck, and shoulder and

reynards (Raynaud's) syndrome[2] (T. 154).  Plaintiff's applications were denied initially and on

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

[2]Raynaud's (ray-NOHZ) disease is a condition that causes some areas of your body — such as your fingers, toes, the tip of your nose and your ears — to feel numb and cool in response to cold temperatures or stress. In Raynaud's disease, smaller arteries that supply blood to your skin narrow, limiting blood circulation to affected areas. http://www.mayoclinic.com/health/raynauds-disease/DS00433

reconsideration.  Plaintiff then requested an administrative hearing, which was held on August 4, 2010.  Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 46 years of age and possessed of 14 years of education.  The Plaintiff  had past relevant work ("PRW") experience as a waitress (T. 155).  On November 5, 2010, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's diabetes mellitus and osteoarthritis did not meet or equal any Appendix 1 listing.  T. 12.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to light work with additional restrictions.  T. 13.  The ALJ then determined that the Plaintiff was able to return to her past relevant work as a waitress.   T. 15.

## II.  Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id*.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary."  *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.  Discussion:

The ALJ found that the Plaintiff had the RFC to perform light work except that she "cannot climb ladders, ropes or stairs. The claimant must avoid extreme temperatures, fumes, dusts, odors, gases and poor ventilation." (T. 13). The Plaintiff contends that this finding is not supported by the record and the court agrees.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§

-3-

404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all

relevant evidence in the record. *Id*. This includes medical records, observations of treating

physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v.*

*Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th

Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the

assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth

Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v.*

*Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a

claimant's RFC must be supported by medical evidence that addresses the claimant's ability to

function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering

medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 *citing Lauer v. Apfel*, 245

F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent

[claimant] is arguing that residual functional capacity may be proved only by medical evidence,

we disagree."). Even though the RFC assessment draws from medical sources for support, it is

ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§

416.927(e)(2), 416.946 (2006).

Dr. Lucy Sauer, a non-examining consultive physician, rendered a Physical RFC

Assessment on September 11, 2009 finding that the Plaintiff could lift 20 pounds occasionally,

10 pounds frequently, and could sit and stand for 6 hours in an 8-hour workday. (T. 286). No

Postural Limitations were noted. (T. 287). Dr. Sauer's opinion was reviewed and affirmed by Dr.

Bill Payne in October 2009. (T. 308). We have stated many times that the results of a one-time

medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base

his decision. *See, e.g., Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion

of a consultative physician does not generally satisfy the substantial evidence requirement). This

is especially true when the consultative physician is the only examining doctor to contradict the

treating physician. Id. *Cox v. Barnhart*  345 F.3d 606, 610 (C.A.8 (Ark.),2003)

Dr. Kuykendall, the Plaintiff's long time treating physician[3], provided a Diabetes Mellitus

Residual Functional Capacity Questionnaire on July 29, 2010.  Dr. Kuykendall indicated that the

Plaintiff had be diagnosed with IDDM (Insulin Dependent Diabetes Mellitus) in exhibited

symptoms of fatigue. (T. 309).  He felt the Plaintiff was incapable of even "low stress" jobs" (T.

310) but that she could sit for more than 2 hours and stand 1 hour at a time, could stand and/or

walk for less than 2 hours in and 8 hour workday and could sit for about 2 hours in an 8 hour

workday.  He also felt that the Plaintiff would need to take unscheduled breaks.  (T. 311).  He

also felt that she would have some severe restrictions in lifting and also postural restrictions (T.

312) and that she would miss more than 4 days per month (T. 314).  This opinion is critical

because the VE testified that a worker would only be allowed to miss one day per month the first

60 days and never allowed four days per month. (T. 51).

The ALJ discounted the opinion of Dr. Kuykendall and stated as follows:

> The undersigned has given consideration to the opinions contained in the
> record. The residual functional capacity conclusions reached by the physicians and
> medical professionals employed by the State Disability Determination Services
> supports a finding of not disabled and are given great weight. Although these
> professionals were non-examining, the state agency medical consultants are
> well-versed in the assessment of functionality as it pertains to the disability
> provisions of the Social Security Act, as amended. The undersigned gives lesser

---

[3]Dr. Kuykendall had treated the Plaintiff since April 2001 (T. 249).

weight to the opinion of Dr. Scott Kuykendall as it is not supported by the medical record as a whole.

A treating physician's medical opinion is given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). These opinions are not automatically controlling, however, because the record must be evaluated as a whole. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir.2005). An ALJ's decision to discount or even disregard the opinion of a treating physician may be upheld where "other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Id. at 920-21.

Under the Social Security regulations, the amount of weight given to a non-controlling medical opinion is determined by applying the following factors: (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship and the frequency of examination; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors "which tend to support or contradict the opinion." 20 C.F.R. §§ 404.1527(d), 416.927(d); *See Owen v. Astrue* 551 F.3d 792, 800 (C.A.8 (Iowa),2008) *citing Wagner*, 499 F.3d at 848.

The ALJ did not even discuss these factors.  Dr. Kuynkendall treated the Plaintiff from 2001 and had seen her more times than the court desires to burden the record with proof of. The

medical evidence is clear that the Plaintiff has a progressive and substantial diabetes problem.

The Plaintiff was admitted to the Johnson RMC in December 2008 because of blurry vision and

thirst. (T. 227-231) and was ultimately diagnosed with Diabetes Mellitus[4] (T. 235).  In February

2009 her blood sugar was elevated to 200-300. By July 2009 her diagnosis was Insulant

Dependant Diabetes Mellitus (IDDM). (T. 232, 299). In December 2009 her A1c[5] was HIGH (the

specific reading is not readable) and her glucose was 239.3. (T. 316).  On June 10, 2010 her A1c

level was 12.4 and glucose was 325.9. (T. 336). The reference range for the A1c is 4.8-5.9.  (Id.).

On December 8, 2010 the Plaintiff's A1c was 14.8 and Glucose was 405.8. (T. 337).

      Dr. James R. Armstrong testified at the Hearing that he felt Dr. Kuykendall's opinion was

"very restrictive" and that he could not understand how he arrived at such a restrictive RFC.  He

testified that he felt she would be able to do light work.  (T. 24).  On cross examination Dr.

Armstrong admitted that fatigue would be identified with insulin dependant diabetes[6]. (T. 25).

Fatigue was listed at the time of Plaintiff's initial filing (T. 154, 170) and Dr. Kuykendall had

identified "fatigue" as one of the Plaintiff's symptoms in his evaluation. (T. 309).  The Plaintiff

testified that "once my sugar starts rising I'm, I'm really fatigued.  I take at least an hour to a two-

hour nap in the afternoons, most every day". (T. 49).   Fatigue has been held to be a serious

impairment that must be evaluated using the same standard as Polaski mandated for pain. *See*

*Jackson v. Bowen*, 873 F. 2d 1111, 1114 (8th Cir. 1989).  It does not appear that the ALJ even

---

[4]The American Diabetes Association criteria for diagnosis of diabetes mellitus is a fasting glucose level greater than or equal to 126 mg/dl after no caloric intake for at least eight hours. http://care.diabetesjournals.org/content/27/suppl_1/s5.full (last visited July 6, 2011).

[5]The A1c test measures your average blood glucose control for the past 2 to 3 months.

[6]The American Diabets Association lists extreme fatigue as one of the symptoms of DM. http://www.diabetes.org/diabetes-basics/symptoms/

considered this impairment.

In addition, during cross examination, Dr. Armstrong testified that an individual with DM would not need to take unscheduled breaks if the condition were "well controlled". Dr. Kuykendall's record of June 7, 2010, less than 30 days before the hearing, shows that the Plaintiff's DM was "uncontrolled". (T. 335, 336). The following exchange then took place between Dr. Armstrong and the Plaintiff's attorney:

> Q      Okay. And if it were poorly controlled and there were
>
> instances where the blood sugar was going high and low and, for
>
> example, if she was showing an A1c of -- from 9 to, say, 13,
>
> indicating that there was some control issues, missing work up to four
>
> days a month or more, would you consider that reasonable probably?
>
> A      If the, if yes, if those, if those A1c's are, are present,
>
> that does, indeed, indicate those exceptionally high blood sugars and,
>
> generally speaking, the symptoms associated with that **are pretty much**
>
> **inconsistent with employment.**

Dr. Armstrong's testimony on cross examination undercuts his opinion that the Plaintiff is capable of "light" duty and actually supports Dr. Kuykendall's opinion. The ALJ does not even discuss the inconsistency of his Medical Expert's testimony but merely notes that Dr. Armstrong "agreed that if the claimant's diabetes was uncontrolled, she would need unscheduled work breaks but if it was controlled that would not be a problem". (T. 15)

If the ALJ is going to discount the opinion of the Plaintiff treating physician he will need additional evidence from a specialist in the field of Diabetes. He should also properly analyze

the Plaintiff's fatigue.

## IV. Conclusion:

Accordingly, the court finds that the ALJ's decision is not supported by substantial

evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter

should be remanded to the Commissioner for further consideration.

Dated this June 28, 2013.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE